**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| KENNETH D. McCOY,<br><br>    Appellant,<br><br>    v.<br><br>CITY OF SUMAS, JIM WRIGHT,<br>official and individual,<br><br>    Respondent. | No. 81746-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DWYER, J. — Kenneth McCoy appeals from the trial court's order dismissing his lawsuit against the City of Sumas (the City) and prosecutor Jim Wright alleging statutory and common law causes of action based on various theories of malicious prosecution. McCoy contends that the trial court erred in ruling that his claims are barred by prosecutorial immunity. We conclude that the prosecutor's charging decisions are well within the scope of prosecutorial immunity. To the extent that McCoy alleged that the prosecutor was not entitled to absolute immunity for certain actions, McCoy failed to support those claims with evidence. We therefore affirm.

I

On January 16, 2018, Kenneth McCoy submitted a City of Sumas business license application for a company called "Northern Tier, Inc." On the

application, McCoy described Northern Tier's business activities as "consulting engineer, technical services, prototype development & fabrication, aerospace, alternative energy." The described business activities appeared to fit within the permitted uses for the industrial district where McCoy proposed operating his business. The City approved the application.

A few months later, city utility billing clerk Shelley Schultz noticed a sharp increase in electricity usage for the building where Northern Tier operated. The prior average use for that address was 281 kilowatts per month, and Northern Tier used 2,982 kilowatts. After reviewing McCoy's business license application, Schultz decided that none of the activities listed under the business description would seem to use 10 times more kilowatts than the previous tenants, so she notified utilities superintendent Ruben Hernandez and Chief of Police Daniel DeBruin.

On April 2, 2018, DeBruin drove past the business. DeBruin could hear "what sounded like machinery and/or fans running inside the building." He also noticed that all the upper story windows were open even though it was a cool, overcast day. These observations, in addition to the sharp increase in electricity consumption at the address, led DeBruin to become concerned that the building was being used for marijuana cultivation.

On April 4, 2018, DeBruin returned to the building and walked to an open door. DeBruin observed a large silver rack system with what appeared to be multiple computer servers. There was also "quite a lot of noise" and "a large amount of heat" coming out of the door. DeBruin spoke with the man working

2

inside the building, who identified himself as Kenneth McCoy, the business owner. McCoy indicated that he was working on installing some ventilation and fans to help cool the interior of the building. DeBruin asked what was causing so much heat, and McCoy stated that he had several machines that created heat "such as 3D printers and other aerospace equipment." When DeBruin asked questions about 3D printing and the aerospace industry, McCoy "seemed to become nervous" and "evasive." McCoy eventually admitted that "I'm doing cryptocurrency here." McCoy explained that this business involved multiple computer servers collecting data on the Internet and converting that data into cryptocurrency.

After learning of DeBruin's findings, city prosecutor Jim Wright discussed the matter with city planner Rollin Harper during a city council executive session. On April 10, 2018, Harper advised Wright via e-mail that "it seems to me that computer-based storage/processing is not listed under either permitted or conditional uses" in the industrial district as set forth in chapter 20.44 of the Sumas Municipal Code (SMC). Harper's interpretation was that McCoy's cryptocurrency mining business "would only be allowed if approved through a conditional use permit process where the applicant demonstrated that the use was similar to at least one other permitted or conditional use and that the proposed use met all of the applicable conditional use permit criteria."

On April 18, 2018, DeBruin completed his police report and forwarded it to Wright for review and possible charges. The report noted that the operation of

multiple computer servers to mine cryptocurrency did not appear to fall under any of the activities listed on Northern Tier's business application.

On June 14, 2018, Wright issued two citations to McCoy. The first citation charged McCoy with two violations of state law: making a false or misleading statement to a public servant under RCW 9A.76.175 and obstructing a law enforcement officer under RCW 9A.76.020. Both charges were based on the premise that McCoy had submitted an application to city officials to obtain a business license that did not match the business being conducted. The second citation charged McCoy with two violations of Sumas Municipal Code: engaging in a business activity without obtaining a business license under SMC 4.04.030 and engaging in a prohibited use in the industrial district under SMC 20.44.040.

At an arraignment on June 14, 2018, the municipal court judge dismissed the state law charges for lack of probable cause but allowed the municipal code charges to proceed. On November 8, 2018, the City chose to dismiss the municipal code charges without prejudice. According to the City, McCoy has continually operated his cryptocurrency mining operation without interruption since before the criminal case began, and he remains in business today.

On March 13, 2020, McCoy filed a pro se lawsuit in superior court against the City and Wright alleging the following causes of action: (1) malicious prosecution, (2) official misconduct/abuse of office, (3) denial of due process and equal protection based on "impermissible selective prosecution," (4) gross negligence, (5) barratry, (6) harassment, (7) intentional infliction of emotional distress, and (8) action on a bond under RCW 42.08.020.

4

The City moved to dismiss the lawsuit under CR 12, arguing that McCoy's claims were barred by prosecutorial immunity and, with respect to the eighth cause of action, for failure to meet the statutory precursors to bring action on a bond. The trial court granted the City's motion to dismiss on the basis that all of McCoy's claims were barred by prosecutorial immunity. McCoy appeals.

II

The City moved to dismiss McCoy's claims under CR 12 on the basis that they were barred by prosecutorial immunity. A trial court may grant dismissal for failure to state a claim under CR 12(b)(6) if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (internal quotation marks omitted) (quoting Bowman v. John Doe Two, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). However, an appellate court treats a CR 12(b)(6) motion to dismiss as a motion for summary judgment "when matters outside the pleading are presented to and not excluded by the court." Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). In its order granting the City's motion to dismiss, the superior court noted that it had reviewed the declaration of Jill Smith in support of the City's motion to dismiss. Attached to the declaration were numerous exhibits, including McCoy's business license application, Schultz's statement, the police report, Harper's e-mail, and copies of the citations issued to McCoy. Because the superior court considered Smith's declaration, we treat the City's motion as a motion for summary

judgment. See Brummett v. Washington's Lottery, 171 Wn. App. 664, 674, 288 P.3d 48 (2012).

We review de novo an order granting summary judgment. Boguch v. Landover Corp., 153 Wn. App. 595, 608, 224 P.3d 795 (2009). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c).

We construe the facts in the light most favorable to the nonmoving party. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). But a nonmoving party cannot rely on speculation or argumentative assertions that unresolved factual issues require a jury trial. KS Tacoma Holdings, LLC v. Shorelines Hr'gs Bd., 166 Wn. App. 117, 126, 272 P.3d 876 (2012). In the context of CR 56(e), "[a] fact is an event, an occurrence, or something that exists in reality." Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359, 753 P.2d 517 (1988), abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 404 P.3d 464 (2017). In other words, a fact "is what took place, an act, an incident, a reality as distinguished from supposition or opinion." Grimwood, 110 Wn.2d at 359. "The 'facts' required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature. Ultimate facts or conclusions of fact are insufficient. Likewise, conclusory statements of fact will not suffice." Grimwood, 110 Wn.2d at 359-60 (citation omitted); accord Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430, 38 P.3d 322

6

(2002). We may affirm summary judgment dismissal on any basis supported by the record. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

III

McCoy argues that the trial court erred by granting the City's motion to dismiss his lawsuit on the basis of prosecutorial immunity. He contends that the allegations in his complaint warrant a jury trial on his claims. We disagree.

A

Whether a prosecutor enjoys absolute immunity for challenged conduct depends upon the nature of the function performed. Kalina v. Fletcher, 522 U.S. 118, 127, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997). Absolute immunity applies only to those actions within the scope of traditional prosecutorial functions. Rodriguez v. Perez, 99 Wn. App. 439, 450, 994 P.2d 874 (2000). This immunity extends to both the State and the entity employing the prosecutor. Janaszak v. State, 173 Wn. App. 703, 718-19, 297 P.3d 723 (2013).

"It is well established that a prosecutor who acts within the scope of his or her duties in initiating and pursuing a criminal prosecution is absolutely immune from liability." Tanner v. City of Federal Way, 100 Wn. App. 1, 4, 997 P.2d 932 (2000) (citing Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). "This immunity is warranted to protect the prosecutor's role as an advocate because any lesser immunity could impair the judicial process." McCarthy v. County of Clark, 193 Wn. App. 314, 337, 376 P.3d 1127 (2016) (citing Musso-Escude v. Edwards, 101 Wn. App. 560, 573, 4 P.3d 151 (2000)).

The charging function is intimately related to the judicial process and prosecutorial immunity must apply to ensure the independence of the decision-making process. McCarthy, 193 Wn. App. at 339 (citing Hannum v. Friedt, 88 Wn. App. 881, 886-87, 947 P.2d 760 (1997)).

The gravamen of McCoy's complaint is that he was a victim of malicious prosecution. The complaint asserted that McCoy's "entire damages and injuries" were brought about because Wright "pursued false criminal charges" against him, and that the fact the charges were dropped proves his theory of malicious prosecution. But because the decision to initiate, pursue, or drop charges falls squarely within the scope of a prosecutor's duties, absolute immunity protects Wright and the City from liability for such actions.

B

McCoy argues that prosecutorial immunity does not apply in this situation because Wright selectively prosecuted him for operating a cryptocurrency mining business. We disagree.

"Prosecutors are vested with wide discretion in determining whether to charge suspects with criminal offenses." State v. Entz, 58 Wn. App. 112, 119, 791 P.2d 269 (1990). "To succeed in an unconstitutional selective prosecution claim the defendant must show (1) disparate treatment, i.e., failure to prosecute those similarly situated, and (2) improper motivation for the prosecution." State v. Terrovonia, 64 Wn. App. 417, 422, 824 P.2d 537 (1992) (citing Wayte v. United States, 470 U.S. 598, 602-03, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)). The decision to charge some but not others guilty of the same crime does not

violate equal protection standards unless the selection was "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" State v. Judge, 100 Wn.2d 706, 713, 675 P.2d 219 (1984) (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)).

Here, McCoy claims that he was improperly and selectively prosecuted on the unjustifiable and arbitrary basis that he owns and operates a legal cryptocurrency business. But the record shows that the charges were based on the premise that McCoy's business license did not cover the mining of cryptocurrency – an activity that drew 10 times the electrical power used by the previous tenant. This is a legitimate, nonarbitrary basis for prosecution. McCoy has not alleged that he was prosecuted on the basis of an unjustifiable standard such as race or religion. He has failed to show discriminatory effect or purpose.

C

McCoy further argues that Wright is not absolutely immune from tort claims arising from his actions in discussing McCoy's business at an executive session prior to the date that the police report was formally filed and lobbying the city council to make his business illegal. This is so, he contends, because Wright was acting as an investigator, not as a prosecutor. We disagree.

Prosecutors enjoy absolute immunity when acting as an advocate for the State, but not when acting as an investigator or administrator. Kalina, 522 U.S. at 125-27 (holding that prosecutor had absolute immunity when acting as an advocate in connection with the preparation and filing of an information and a

motion for an arrest warrant but not in attesting to the truth or falsity of facts);

Buckley v. Fitzsimmons, 509 U.S. 259, 273-74, 113 S. Ct. 2606, 125 L. Ed. 2d

209 (1993) (noting that prosecutor who performs investigative functions, such as

planning and executing raid on suspected weapons cache, normally performed

by police, is not entitled to absolute immunity).

The only evidence McCoy cites in support of his claim is the April 10, 2018

e-mail from Harper to Wright, submitted by the City in support of its motion to

dismiss, in which Harper opines that McCoy's cryptocurrency business requires a

conditional use permit.  No other evidence describes Wright's precharging

conduct.  Viewed in the light most favorable to McCoy, this e-mail suggests that

Wright sought the city planner's opinion regarding whether cryptocurrency mining

requires a conditional use permit.  In so doing, Wright was acting as an advocate

in deciding whether or not to file charges, not as an investigator gathering

evidence or as a witness attesting to the truth or falsity of facts.  And, in any

case, the e-mail does not establish that Wright's conduct was improper in any

way.

D

McCoy further asserts that Wright is not shielded by absolute immunity for

tortious conduct that allegedly occurred outside of any advocacy role, including

threatening him with physical restraint or confinement in jail, threatening to file a

warrant for his arrest, and threatening to shut down his business.  But the

allegations in McCoy's complaint were merely opinions or suppositions without a

factual basis.  The facts required by CR 56(e) to overcome summary judgment

are evidentiary in nature. McCoy's conclusory claims fail to establish the existence of genuine issues of material fact for trial.[1]

V

Finally, McCoy argues that the trial court erred by denying him leave to amend his original pleadings. "After an answer is served, CR 15(a) permits a plaintiff to amend a complaint only by leave of court, which shall be freely given when justice so requires." Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 729, 189 P.3d 168 (2008). The court may consider whether the new claim is futile or untimely. Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154, 943 P.2d 1358 (1997). We will reverse a trial court's ruling on a request to amend only if the trial court abused its discretion. Nepstad v. Beasley, 77 Wn. App. 459, 468, 892 P.2d 110 (1995).

McCoy asserts that his motion was not untimely or futile. We disagree. McCoy filed his motion on the morning of the hearing on the City's motion to dismiss. Neither the court nor the City had received a copy of the motion prior to the hearing. Moreover, the motion was not noted for the hearing. The City asked the court to strike the untimely filings prior to ruling on the motion to dismiss. Although the court did not expressly state that it had struck the untimely motion, the order of dismissal does not include it among the materials reviewed in its ruling.

---

[1] McCoy also raises several new issues for the first time in his reply brief. Issues raised and argued for the first time in a reply brief are too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

McCoy contends that his lateness should be excused because he was blindsided by the City's prosecutorial immunity defense and it all happened too fast for him to respond. But the record shows that the City's motion to dismiss was initially noted for June 5, 2020. The City struck and renoted the motion for two weeks later at McCoy's request to give him more time to respond. A trial court must hold pro se parties to the same standards to which it holds attorneys. Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). Under these circumstances, the trial court acted well within its discretion in declining to grant leave to amend.

Affirmed.

Dwyer, J.

WE CONCUR:

Chun, J.          Smith, J.